**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENISE E. NOVAK, | ) | |
| HOWARD HOFFMAN, | ) | |
| DAVID FRIEDMAN and | ) | |
| LAWRENCE ESTEP, | ) | |
| individually and on behalf of a class, | ) | 13-cv-9165 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiffs, Denise E. Novak, Howard Hoffman, David Friedman and Lawrence
Estep, bring this action against defendant Target Corporation to obtain redress for damages
sustained by the plaintiffs and other members of the class as a result of the failure of defendant
to maintain the security of private and confidential financial and personal information of
defendant's credit and debit card customers at Target Stores throughout the United States.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction of the action pursuant to 28 U.S.C.
§1332(d), because the amount in controversy exceeds $5 million, at least one plaintiff has
citizenship diverse from the defendant, and there are more than 100 class members.

3.      Venue is proper in this court under 28 U.S.C. §1391 because defendant operates
stores within this District and the conduct of the defendant upon which the plaintiff's claims are
based occurred primarily within this District.

### PARTIES

4.      Plaintiff Denise E. Novak is a resident, domiciliary and citizen of Illinois.

5.      Plaintiff Howard Hoffman is resident, domiciliary and citizen of Illinois.

1

6.      Plaintiff David Friedman is a resident, domiciliary and citizen of Illinois.

7.      Plaintiff Lawrence Estep is a resident, domiciliary and citizen of Illinois.

8.      Defendant Target Corporation ("Target") is a corporation organized under the laws of the State of Minnesota, with its principal place of business located at 1000 Nicollet Mall, TPS-2672, Minneapolis, Minnesota 55403.  Target owns and operates stores throughout the United States including in Cook County.

## FACTS

9.      As reported by the Chicago Tribune on December 19, 2013, "Target Corporation said data from about 40 million credit and debit cards might have been stolen from shoppers at its stores during the first three weeks of the holiday shopping season.  The data theft, unprecedented in its ferocity, took place over a 19-day period that begun the day before Thanksgiving . . . .Target said the breach, second-largest hack at a U.S. retailer, might have compromised accounts between Nov. 27 and Dec. 15, a period of nearly three weeks."

10.     Krebs on Security, a security industry blog, said the breach involved nearly all of Target's stores –  which number 1,797 – in the United States and investigators believed the data was obtained via software installed in point-of-sales terminals used to swipe magnetic strips on payments cards.

11.     Target has admitted that "approximately 40 million credit and debit card accounts may have been impacted between Nov. 27 and Dec. 15, 2013."  http://pressroom.target.com/news/target-confirms-unauthorizaed-access-to-payment-card-data-in-u-s-stores.

12.     The information compromised included, without limitation, the customers' names, credit or debit card number, the card's expiration date, and the card's security code.

13.     As a result of this breach of security, class members' debit cards and credit cards were exposed to misuse; plaintiffs and class members were required to expend time, energy and expense to address and resolve these financial disruptions and mitigate the consequences; they suffered consequent emotional distress and their credit and debt card information is at an

2

increased risk of theft and unauthorized use..

14.     Target has advised consumers to add a fraud alert to their credit files, which "may delay your ability to obtain credit."

15.     The goods and services purchased by plaintiffs and the class members from defendant had a lesser value than if defendant had implemented adequate security measures.

16.     During the class period, defendant failed to adequately safeguard and protect the private and confidential debit card and credit card information of plaintiffs and class members, so that wrongdoers were able to obtain access to such data within defendant's information technology systems or in the course of transmission of the data to financial institutions.

17.     Lack of adequate security in defendants' information technology systems enabled the wrongdoers to install software used on point-of-sales terminals used to swipe magnetic strips on payment cards.

18.     Defendant did not adequately monitor its  information technology system for the presence of foreign software in a manner that would enable them to detect this intrusion, so that the breach of security and diversion of customer information was able to continue unnoticed for over two weeks during the height of the 2013 holiday shopping season.  This was an act which harmed plaintiffs and class members by increasing the risk of future harm that plaintiffs and class members would have otherwise faced, absent the defendant's action.

19.     Members of the payment card industry ("PCI") established a Security Standards Counsel ("PCI SSC") in 2006 to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

20.     The PCI DSS provides, "If you are a merchant that accepts payment cards, you are required to be compliant with the PCI Data Security Standard." Target is a merchant that accepts payment cards.

21.     The PCI DSS requires a merchant to:

        a.      **Assess**—identify cardholder data, take inventory of IT assets and business

processes for payment card processing, and analyze them for vulnerabilities that could expose cardholder data.

b.     **Remediate**—fix vulnerabilities and do not store cardholder data unless needed.

c.     **Report**—compile and submit required remediation validation records (if applicable) and submit compliance reports to the acquiring bank and card brands with which a merchant does business.

22.     On information and belief, Target failed to comply with the PCI DSS, resulting in the security breach.

## FACTS RELATING TO PLAINTIFFS

23.     Plaintiff Denise E. Novak visited the Target store in Hillside, Illinois and charged purchases on December 12, 2013, she also visited the Target store in Lombard, Illinois and charged purchases on December 15, 2013.

24.     Plaintiff Lawrence Estep used a debit card to make purchases at a Target store in central Illinois. He thereafter received a call on December 19, 2013, from the Woodforest Bank Fraud Department informing him that his debit card information had been compromised and he would be issued a new card. Woodforest was the issuer of the card.

25.     Plaintiff Howard Hoffman visited a Target store in northern Illinois and made purchases on his Target store card on December 7, 2013.

26.     Plaintiff David Friedman visited a Target store in northern Illinois and made purchases on his Target store card on November 28, 2013.

## COUNT I – BREACH OF IMPLIED CONTRACT

27.     Plaintiffs incorporate paragraphs 1-26.

28.     When plaintiffs confided their private and confidential debit card and credit card information to defendant in order to make purchases at defendant's store, plaintiffs and class members entered into implied contracts with defendant, under which defendant agreed to

4

safeguard and protect all such information.

29.     Plaintiffs and class members would not have entrusted their private and confidential financial and personal information to defendant in the absence of such an implied contract with defendant.

30.     Defendant breached the implied contracts it had made with plaintiffs and class members by failing to safeguard such information.

31.     The damages sustained by plaintiffs and class members as described above were the direct and proximate result of defendant's breaches of these implied contracts.

## CLASS ALLEGATIONS

32.     Plaintiffs bring this claim pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a class of all persons or entities anywhere in the United States, who made purchases at stores owned or operated by defendant during the period from November 27, 2013 through December 15, 2013, using a credit or debit card.

33.     The exact number of class members and their identities are unknown at this time. However, since as many as 40 million debit card and credit card numbers of defendant's customers were stolen, the class members are so numerous that joinder of all individual class members is impracticable.

34.     Questions of law and fact common to all class members predominate over any questions affecting only individual members, including the following:

    a.     Whether defendant breached implied contracts with class members by failing properly to safeguard their private and confidential financial and personal data. *See Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011).

    b.     Whether defendant should compensate plaintiff and class members for damages for the increased risk of future harm and costs expended to mitigate harm. *See Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 163 (1st Cir. 2011).

35.     Plaintiffs' claims are typical of the claims of all class members, because all such claims arise from the same set of facts regarding defendant's breach of implied contract and its failures to protect plaintiffs and class members private and confidential financial and personal data during the 2013 holiday shopping season.

36.     Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel with class action experience for the prosecution of this case.

37.     Plaintiffs have no interest that is antagonistic to the interests of other class members.

38.     This class action is superior to other available methods for fairly and efficiently adjudicating class members' claims because:

a.     The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual cases;

b.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which could establish incompatible standards of conduct for the defendant or allow some class member's claims to affect adversely other class members abilities to protect their interests.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class for the following relief:

(1)     Compensatory damages;

(2)     Costs of suit;

(3)     Such other or further relief as the Court deems proper.

### COUNT II – ILLINOIS CONSUMER FRAUD ACT

39.     Plaintiffs incorporate paragraphs 1-26.

40.     Target engaged in both unfair and/or deceptive acts and practices, in violation of 815

6

ILCS 505/2, by:

a. Failing to properly implement adequate, commercially reasonable security measures to protect its customers' private financial information;

b. Failing to warn shoppers that their information was at risk as a result of Target's failure to properly implement such measures.

c. Failing to immediately notify affected customers of the nature and extent of the security breach.

41. These acts and omissions of Target were intended to induce plaintiff and the class members to rely on the misinformation that their financial information was secure and protected when using debit and credit cards to shop at Target.

42. Plaintiffs and class members were injured by Target's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information while shopping at Target.

43. Target also engaged in an unlawful practice by failing to comply with 815 ILCS 530/10(a), which provides:

**Sec. 10. Notice of Breach. (a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system.** . . .

44. 815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act".

45. Target's conduct was conducted with reckless indifference toward the rights of others.

## CLASS ALLEGATIONS

46. Plaintiffs bring this claim pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a class of all persons or entities who made purchases at stores owned or operated by defendant in

Illinois during the period from November 27, 2013 through December 15, 2013, using a credit or debit card.

47.     The exact number of class members and their identities are unknown at this time. However, since as many as 40 million debit card and credit card numbers of defendant's customers were stolen, and Illinois accounts for about 5% of the national population, it is reasonable to infer that the class members are so numerous that joinder of all individual class members is impracticable.

48.     Questions of law and fact common to all class members predominate over any questions affecting only individual members.

49.     Plaintiffs' claims are typical of the claims of all class members, because all such claims arise from the same set of facts and are based on the same legal principles.

50.     Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel with class action experience for the prosecution of this case.

51.     Plaintiffs have no interest that is antagonistic to the interests of other class members.

52.     This class action is superior to other available methods for fairly and efficiently adjudicating class members' claims because:

     a.     The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual cases;

     b.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which could establish incompatible standards of conduct for the defendant or allow some class member's claims to affect adversely other class members abilities to protect their interests.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class for the following relief:

8

     a.       Compensatory damages;

     b.       Punitive damages;

     c.       Injunctive relief to prevent further security breaches;

     d.       Reasonable attorneys' fees, litigation expenses, and costs of suit;

     e.       Such other or further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
     & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-42500
(312) 419-0379 (FAX)

T:\29344\Pleading\Complaint_Pleading.WPD


## JURY DEMAND

Plaintiffs demand a trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

9

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


                                                    s/Daniel A. Edelman
                                                    Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)